RECORD NUMBER: 17-1290

# United States Court of Appeals

### *for the*

# Fourth Circuit

Z.G., by and through his mother and next friend, C.G., on behalf of herself, and J.G., on behalf of himself,

*Plaintiffs/Appellants,*

– v. –

PAMLICO COUNTY PUBLIC SCHOOLS BOARD OF EDUCATION; LISA JACKSON, in her official capacity; CHRIS DAVIS, Pamlico County Sheriff, in his official capacity as the chief administrator of the Pamlico County Sheriff's Department; and DEPUTY BAILEY, in his official capacity,

*Defendants/Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT GREENVILLE

# BRIEF OF APPELLEE CHRIS DAVIS

CHRISTOPHER J. GEIS
WOMBLE CARLYLE SANDRIDGE &
RICE, *A Limited Liability Partnership*
One West Fourth Street
Winston-Salem, NC 27101
(336) 721-3600
cgeis@wcsr.com

*Counsel for Appellee Chris Davis*

CP COUNSEL PRESS • VA – (800) 275-0668

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. <u>17-1290</u>    Caption: <u>Z.G. et al. v. Pamlico County Public Schools Bd. of Education,et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Sheriff Chris Davis</u>
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct
       financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
       If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)      ☐ YES ☑ NO
       If yes, identify any publicly held member whose stock or equity value could be affected
       substantially by the outcome of the proceeding or whose claims the trade association is
       pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?                            ☐ YES ☑ NO
       If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Christopher J. Geis                        Date:    March 7, 2017

Counsel for:  Sheriff Chris Davis

## CERTIFICATE OF SERVICE
*****************************

I certify that on ___March 7, 2017___ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Stephon J. Bowens/Saiyani T. Mukombe       Rachel B. Hitch
Bowens Law Group, PLLC                     Schwartz & Shaw, PLLC
1130 Situs Court, Suite 240                19 West Hargett Street, Suite 1000
Raleigh, NC 27606                          Raleigh, NC 27601
stephon@bowenslawpllc.com                  rhitch@schwartz-shaw.com
saiyani@bowenslawpllc.com

/s/ Christopher J. Geis                              March 7, 2017
        (signature)                                      (date)

- 2 -

# **TABLE OF CONTENTS**

Corporate Disclosure Statements

Statement of Jurisdiction ............................................................................... 1

Statement of the Issues Presented for Review ........................................... 1

Statement of the Facts .................................................................................... 1

Summary of Argument .................................................................................. 5

Statement of the Applicable Standards of Review ................................... 5

Argument .......................................................................................................... 6

1.  The District Court correctly declined to grant the plaintiffs' leave to file a Second Amended Complaint because said complaint was futile in that it would have not have cured the defects that led to dismissal of the First Amended Complaint ........... 6

2.  The District Court correctly granted the motion to dismiss the claims under 42 U.S.C. § 1983 against Sheriff Chris Davis and "Deputy Bailey." ................................................................................. 8

3.  The District Court was well within its discretion in not retaining jurisdiction over the plaintiffs' state-law claims ............................... 13

Conclusion ..................................................................................................... 18

Statement with Respect to Oral Argument ........................................... 18

Certificate of Compliance

Certificate of Service

i

# TABLE OF AUTHORITIES

**Cases**

Baker v. Smith,
    224 N.C. App. 423, 737 S.E.2d 144 (2012) .............................................. 8, 16

City of Oklahoma City v. Tuttle,
    471 U.S. 808 (1985)....................................................................................... 9

Clark v. Burke County,
    117 N.C. App. 85, 450 S.E.2d 747 (1994) .............................................. 7, 16

County of Sacramento v. Lewis,
    523 U.S. 833 (1998)..................................................................................... 12

Cruz v. Maypa,
    773 F.3d 138 (4th Cir. 2014) ........................................................................ 5

Jordahl v. Democratic Party of Va.,
    122 F.3d 192 (4th Cir. 1997) ........................................................................ 5

Kentucky v. Graham,
    473 U.S. 159 (1985)....................................................................................... 9

Laber v. Harvey,
    438 F.3d 404 (4th Cir. 2006) ........................................................................ 6

Meyer v. Walls,
    347 N.C. 97, 489 S.E.2d 880 (1997) ............................................................ 7

Monell v. Dep't of Soc. Svcs.,
    436 U.S. 658 (1978)....................................................................................... 9

Mullis v. Sechrest,
    347 N.C. 548, 495 S.E.2d 721 (1998) ........................................................... 7

Nourison Rag Corp. v. Parvizian,
    535 F.3d 295 (4th Cir. 2008) ........................................................................ 5

Shanaghan v. Cahill,
    58 F.3d 106 (4th Cir. 1995) ........................................................... 14

Stevenson ex. rel. Stevenson v. Martin County Bd. of Educ.,
    3 Fed. App'x 25 (4th Cir. 2001) ..................................... 5, 9, 10, 15

Wooton v. CL, LLC,
    504 Fed. App'x 220 (4th Cir. 2013) ............................................ 5

Wright v. Collins,
    766 F.2d 841 (4th Cir. 1985) ........................................................ 10

Yashenko v. Harrah's NC Casino Co., LLC,
    446 F.3d 541 (4th Cir. 2006) ........................................................ 17

**Rules and Statutes**

28 U.S.C. § 1291 ......................................................................... 1

28 U.S.C. § 1367 ......................................................................... 13

28 U.S.C. § 1367(a) ..................................................................... 14

28 U.S.C. § 1367(c) ..................................................................... 14

42 U.S.C. § 1983 ................................................................. passim

N.C. Gen. Stat. § 1-52 ................................................................. 15

N.C. Gen. Stat. § 122-262(a) ...................................................... 12

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because the decision of the United States District Court for the Eastern District of North Carolina dismissing the plaintiffs' complaint is a final decision from which the plaintiffs have appealed.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

As to the defendant Sheriff and "Deputy Bailey," the plaintiff has asserted the following issues for review:

1.      Whether the District Court abused its discretion in denying the Plaintiff-Appellants' motion to file a Second Amended Complaint.

2.      Whether the District Court correctly dismissed the Plaintiff-Appellants' claims under 42 U.S.C. § 1983.

3.      Whether the District Court properly declined to retain supplemental jurisdiction over the Plaintiff-Appellants' claims under state law.

## STATEMENT OF THE FACTS

The facts are laid out in the Court's Order of February 23, 2017. (JA 475-80.) However, most of the facts relate to the plaintiffs' claims against defendants Pamlico County Public Schools Board of Education and Superintendent Lisa Jackson. Only a few facts relate to the claims against defendant Sheriff Chris Davis and "Deputy Bailey," and they are addressed here.

1

Plaintiff Z.G., who is six years old, is a first-grade student at Pamlico County Primary School who enrolled in January 2015. (JA 64; 1st Amd. Compl. ¶ 4; JA 475.) Plaintiff C.G. is his mother, and plaintiff J. G. is his father. (JA 64; 1st Amd. Compl. ¶¶ 4-5.)

The plaintiffs allege that the Pamlico County Board of Education and Lisa Jackson, the superintendent of the Pamlico County Schools, have not provided Z.G. with an adequate educational environment suitable for his special needs. (JA 64-65; 1st Amd. Compl. ¶¶ 7-9, 11.) The plaintiffs allege that Z.G. has "documented disabilities and medical issues" and that the school system has violated state and federal law in not accommodating these needs. (JA 65; 1st Amd. Compl. ¶ 11.)

As to defendants Sheriff Davis and "Deputy Bailey"[1] specifically, the following facts are relevant:

On August 26, 2015, the principal at Z.G.'s school called Z.G.'s mother and requested that she pick Z.G. up from school because Z.G. had been running into the parking lot for three straight days in an apparent attempt to flee. (JA 477.) The principal thought that Z.G. "was trying to harm himself." (JA 477.) School

---

[1] The defendant listed as "Deputy Bailey" has never been served and so is not before the court, but the analysis for the claims against the Sheriff and deputy sheriff is the same.

Superintendent Lisa Jackson offered to drive Z.G. and his mother to the hospital, but C.G. declined the offer.  (JA 477.)

A Pamlico County sheriff's deputy then arrived and took Z.G. in a patrol car to Carolina East Medical Center in New Bern without the consent of C.G.  (JA 477.)  Z.G. was then involuntarily committed by the New Bern Police Department and for two days remained in the hospital, where he was given the drug Ativan, all against his mother's wishes.  (JA 477.)  On August 27, 2015, he was taken to a hospital in Raleigh by a Craven County sheriff's deputy.  (JA 477.)

On November 10, 2015, at the request of the school principal, a Pamlico County sheriff's deputy went to J.G.'s business office to deliver to J.G. a copy of a psychological evaluation of Z.G.  (JA 480.)  On November 12, 2015, a "Deputy Bailey" went to J.G.'s business to deliver the evaluation and asked J.G.'s colleagues where J.G. was.  (JA 480.)  "Deputy Bailey" called J.G. and met him at a fast-food restaurant later that day to deliver the evaluation in person.  (JA 480.)

On December 3, 2015, "Deputy Bailey" delivered a note to J.G. about Z.G.'s excessive absences from school even though a similar note about Z.G.'s sister had been delivered by mail.  (JA 480.)

The plaintiffs claim that the school should have mailed these papers to the plaintiffs instead of using a sheriff's deputy to deliver them and that the school

3

principal was using the deputy "as her personal document courier." (JA 80-81; 1st Amd. Compl. ¶¶ 111-12.)

In their First Amended Complaint, the plaintiffs allege state and federal claims against the school system defendants, including violation of federal statutes, none of which are applicable to the defendant Sheriff and "Deputy Bailey." The District Court found that the only claims alleged against the Sheriff and "Deputy Bailey" are Count V, which alleges a violation of constitutional rights by deprivation of liberty under 42 U.S.C § 1983, and Counts 11 and 12, which seek permanent injunctions against the defendants under federal law.[2] (JA, 493.).

After defendant Sheriff Davis filed a motion to dismiss, the plaintiffs requested leave to file a Second Amended Complaint under which, among other things, they sought to change the identity of defendant "Deputy Bailey" to Deputy Nicholas Blayney. (Pl.'s Brf. at 38.) It is undisputed that the plaintiffs have not served any deputy sheriff in this action, only Sheriff Davis.

---

[2] The plaintiffs also allege state common-law claims for negligent infliction of emotional distress, false imprisonment, and battery, but do not mention the Sheriff or his deputy in these claims. (JA 88-94; 1st Amd. Compl. ¶¶ 144-55. ¶¶ 156-59, and ¶¶ 160-69.)

4

## SUMMARY OF ARGUMENT

The District Court correctly granted the motion to dismiss the claims under 42 U.S.C. § 1983 against Sheriff Chris Davis and Deputy Bailey, correctly held that the plaintiffs' proposed Second Amended Complaint was futile because it would not cure the defects that led to dismissal of the claims in the First Amended Complaint, and properly exercised its discretion not to retain supplemental jurisdiction over the plaintiffs' state-law claims.

## STATEMENT OF THE APPLICABLE STANDARDS OF REVIEW

The standard of review of an order granting a motion to dismiss is de novo. Cruz v. Maypa, 773 F.3d 138, 143 (4th Cir. 2014).

The standard of review of an order declining a motion to amend a complaint is whether the District Court abused its discretion. Wooton v. CL, LLC, 504 Fed. App'x 220, *2 (4th Cir. 2013) (citing Nourison Rag Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008)).

The standard of review for a District Court's decision to decline to retain supplemental jurisdiction over state-law claims is also whether the court abused its discretion. Stevenson ex. rel. Stevenson v. Martin County Bd. of Educ., 3 Fed. App'x 25, *35 (4th Cir. 2001) (citing Jordahl v. Democratic Party of Va., 122 F.3d 192, 203 (4th Cir. 1997)).

5

## ARGUMENT

**1.** **The District Court correctly declined to grant the plaintiffs' leave to file a Second Amended Complaint because said complaint was futile in that it would have not have cured the defects that led to dismissal of the First Amended Complaint.**

The District Court correctly denied the plaintiffs' motion to file a Second Amended Complaint because the amended complaint would have been futile.

A District Court has the discretion to deny a plaintiff's motion to amend a complaint if the amendment would be futile. Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006).

Here, as to the federal claims, the plaintiffs made no new allegations or claims in the proposed Second Amended Complaint as to the Sheriff and his deputy. The plaintiffs admit that the only significant change in the Second Amended Complaint was to correct the identity of the defendant deputy sheriff from Deputy Bailey to Deputy Nicholas Blayney. (Pl.'s Brf. at 38.) Thus, the essence of the federal claims against the Sheriff and the deputy remained unchanged, and, because the claims would have been dismissed on the merits under either the First or Second Amended Complaint, the filing of the Second Amended Complaint would have been futile. The defendants explain below why the federal claims against the Sheriff and his deputy were properly dismissed on their merits.

6

As to the claims under state law, the District Court concluded that no state common-law claims applied to Sheriff Bailey and Deputy Bailey, only the Section 1983 claim and requests for injunctions.  (JA 493.)  Even if the plaintiffs had asserted state common-law claims, however, the proposed Second Amended Complaint would have been futile and would not have prevented dismissal of any state law claims because the plaintiffs failed to properly assert allegations piercing the defendants' entitlement to immunity.

The First Amended Complaint did not allege that the defendants, who were sued only in their official capacities, had waived governmental immunity.  See JA 62-98 (1st Amd. Compl.).  Such an allegation is required when suing a county official in his official capacity under North Carolina law.  "When suing a county or its officers, agents or employees, the complaint must allege this waiver in order to recover. . . . [A]bsent an allegation to the effect that immunity has been waived, the complaint fails to state a cause of action."  Clark v. Burke County, 117 N.C. App. 85, 88, 450 S.E.2d 747, 748 (1994).  See also Meyer v. Walls, 347 N.C. 97, 111, 489 S.E.2d 880, 888 (1997), and Mullis v. Sechrest, 347 N.C. 548, 554-55, 495 S.E.2d 721, 725 (1998) (both noting that official-capacity claims against a governmental official are merely another way of suing the governmental entity for which the official works).

The proposed Second Amended Complaint purports to sue the Sheriff and his deputy in their official and individual capacities, but it does not cure the defect of failing to allege a waiver of governmental immunity against the defendants in their official capacities, nor does it allege a piercing of the defendants' entitlement to public officer's immunity for the claims against the defendants in their individual capacities. <u>See</u> JA 327-67 (2nd Amd. Compl.). When suing a law enforcement officer in her individual capacity, a plaintiff must allege that the "defendant acted maliciously, corruptly, or outside the scope of her official authority." <u>Baker v. Smith</u>, 224 N.C. App. 423, 435, 737 S.E.2d 144, 152 (2012). Absent such an allegation, the complaint fails to state a claim for relief. <u>Id</u>.

Thus, the plaintiffs' First Amended Complaint is fatally flawed as to any allegations under state law and the proposed Second Amended Complaint does not cure this defects. The Second Amended Complaint, if the Court granted the plaintiffs' motion to file it, thus would be futile as to any state-law claims, and therefore the District Court properly exercised its discretion in declining to allow the plaintiffs to file it.

**2. <u>The District Court correctly granted the motion to dismiss the claims under 42 U.S.C. § 1983 against Sheriff Chris Davis and "Deputy Bailey."</u>**

The plaintiffs' claims under 42 U.S.C. § 1983 against the Sheriff and his deputy were properly dismissed because the plaintiffs did not allege any facts that

would support a claim that the Sheriff and his deputy violated the plaintiffs' constitutional rights, did not allege the personal involvement of the defendant Sheriff in any of the events alleged, and did not provide any allegations of an official policy, practice, or custom that would support a claim against the Sheriff or his deputy in their official capacities.

The plaintiffs initially sued Sheriff Davis and "Deputy Bailey" in their official capacities. As the trial court rightly observed, because a suit against an official in his official capacity is a suit against the entity of which he is an agent, both claims are really claims against the Office of Sheriff of Pamlico County. (JA 493-94 (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).)  Thus, the claims against the deputy were "duplicative" with the claims against the Sheriff. (JA 493.)

In order to state a claim against an official in his official capacity under Section 1983, a plaintiff must show more than just that an official violated a plaintiff's constitutional rights; rather, the plaintiff must show that a policy, practice, or custom of the local government caused the violation, or that a failure to train amounting to "deliberate indifference to the rights of persons" led to unconstitutional conduct. Stevenson v. Martin County Bd. of Educ., supra, at *32-33 (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 818-19 (1985); Monell v. Dep't of Soc. Svcs., 436 U.S. 658, 694 (1978).

In the plaintiffs' First Amended Complaint, as the court below found, no allegations regarding a policy, practice, or custom of the Pamlico County Sheriff's Office, or of a failure to train, are asserted.    (JA 494.)   The proposed Second Amended Complaint also fails to make any such allegations.   Thus, the official-capacity claims against the Sheriff and his deputy fail as a matter of law.

Second, in order to succeed on an official-capacity claim, a plaintiff must show an underlying violation of a constitutional right.   Stevenson, 3 Fed. App'x 25 at *3.   As explained below, and as the District Court found, the plaintiffs have not done so in this case.

The plaintiffs, in the proposed Second Amended Complaint, purport to name Sheriff Davis and his deputy in their individual capacities.   However, in order to adequately state a claim against an official in his individual capacity, a plaintiff must show not only a violation of a constitutional right but also that the official was personally involved in such a violation.   "In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights,' " or had "personal knowledge of and involvement in the alleged deprivation."   Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (internal citations omitted).

As is clear, however, the plaintiff made no such allegations in either the First Amended Complaint or proposed Second Amended Complaint.   There is simply no

allegation that Sheriff Davis was in any way involved in or knew of any of the actions by his deputies with regard to the plaintiffs.

In addition, none of the alleged actions by Pamlico County sheriff's deputies, as the District Court found, amounted to a violation of the plaintiffs' constitutional rights. The plaintiffs cite no case law to show otherwise. <u>See</u> Pl.'s Brf. at 39, 42-43.

The essence of the plaintiffs' claim against the Sheriff and his deputies is that on one occasion a deputy sheriff, at the request of the school system, transported Z.G. to the hospital for evaluation for an involuntary commitment and that on three occasions the school system used a sheriff's deputy to get papers about Z.G. to his parents. <u>See</u> JA 480, 494-96.

As to transporting Z.G. to the hospital for evaluation for an involuntary commitment, this allegation fails because, as the District Court noted, the plaintiffs did not allege that the Pamlico County Sheriff's Office sought the commitment but rather alleged that the New Bern Police Department did. <u>See</u> JA 494. A Pamlico County sheriff's deputy only transported Z.G. to the hospital – and only after the school system requested that it do so because Z.G. was attempting to harm himself. <u>See</u> JA 494. Such conduct does not support any allegation of unconstitutional

11

conduct.[3]

The plaintiffs' claim on this account is for deprivation of liberty under Section 1983. (JA 87; 1st Amd. Compl. ¶¶ 140-43.) The United States Supreme Court has said that, for such a claim to be plausible, a defendant government official must engage in conduct that was "so egregious, so outrageous, that it may fairly be said to <u>shock the contemporary conscience</u>." <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 847 n.8 (1998) (emphasis added). For example, the Court has held that "the forced pumping of a suspect's stomach [is] enough to offend due process," and it " 'shocks the conscience' and violates the 'decencies of civilized conduct.' " <u>Id</u>. at 846 (internal citations omitted). In <u>Lewis</u> the Supreme Court said that the actions of police officers in a high-speed traffic chase that resulted in the death of a motorcyclist did not shock the conscience. <u>Id</u>. at 836.

A deputy sheriff who transports a child to a hospital for treatment at the request of school officials who believe the child is trying to hurt himself can hardly form the basis of conduct that shocks the conscience. Sheriff's deputies are authorized by law to take such actions. N.C. Gen. Stat. § 122-262(a) provides that law enforcement officers who know of "an individual who is subject to impatient

---

[3] The plaintiffs now claim that the New Bern Police Department had Z.G. involuntarily committed because of an inter-agency agreement with the Pamlico County Sheriff's Office, but there is nothing in the record to support this and the plaintiffs offer no evidence for this assertion. (Pl.'s Brf. at 14 n.3.) Even if it were true, the claim assumes that the involuntary commitment was unlawful or unconstitutional, which is a dubious proposition.

commitment . . . and who requires immediate hospitalization to prevent harm to self or others" may take such an individual immediately to a hospital or other facility for evaluation by a doctor. It thus cannot be said that, in this case, a deputy's act of transporting a child whom the school system believed was a threat to himself "shocks the conscience."

As to delivering papers to Z.G.'s parents, the plaintiffs assert, "Having a sheriff's deputy show up at your job and ask for you is <u>unusual</u> in the education context. . . . " (Pl.'s Brf. at 43 (emphasis added).) Yet the plaintiffs offer no argument or authority that any such action violated any of the plaintiffs' constitutional rights. Even if, for the sake of argument, an act is "unusual," it does not mean that it is a violation of a person's constitutional rights, and it certainly does not "shock the conscience."

In sum, the plaintiffs, either in their First Amended Complaint or the proposed Second Amended Complaint, do not state allegations that support claims under 42 U.S.C. § 1983 against either Sheriff Davis or any of his deputy sheriffs. Thus, this claim was properly dismissed for failure to state a claim.

### 3. <u>The District Court was well within its discretion in not retaining jurisdiction over the plaintiffs' state-law claims.</u>

The doctrine of supplemental jurisdiction is provided for in 28 U.S.C. § 1367 and allows federal courts to accept jurisdiction over state law claims when they "form part of the same case or controversy as the federal claims" over which

the court has original jurisdiction.  Shanaghan v. Cahill, 58 F.3d 106, 109 (4th Cir. 1995) (citing 28 U.S.C. § 1367(a)).

"The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action drops away." Id. at 109 (emphasis in original).  Courts " 'may decline' to exercise supplemental jurisdiction in certain circumstances." Id. at 110 (quoting 28 U.S.C. § 1367(c)).  Specifically, "a court has discretion to dismiss or keep a case when it 'has dismissed all claims over which it has original jurisdiction.' " Id. (citing 28 U.S.C. § 1367(c)(3)).  Courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Id. (emphasis added).

In evaluating whether a court should retain jurisdiction, a court may look at "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." Id.  The doctrine "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." Id.

This Court has said that it will "leave it to the sound judgment of the district court to decide whether to exercise jurisdiction over" supplemental state-law claims. Id. at 112.

In <u>Stevenson  v. Martin County Bd. of Educ.</u>, <u>supra</u>, this Court said the trial court "made a prudent decision" in declining to retain supplemental jurisdiction over state-law claims when it dismissed the federal claims for failure to state a claim, and it held that the trial court did not abuse its discretion. <u>Id.</u> at *34-35.

In the case at bar, the District Court's decision not to retain jurisdiction over the state-law claims actually benefits the plaintiffs because they can re-file these claims in state court rather than have them dismissed outright by the District Court. The plaintiffs' claims arose beginning in January 2015.  (JA 475.)  The statute of limitations for the plaintiffs' state-law claims is three years.  <u>See</u> N.C. Gen. Stat. §§ 1-52(13) and 1-52(16) (three-year statute for claims against public officers or for personal injury).  Thus, the statute of limitations has not run.

As it stands now, however, the plaintiffs' state-law claims would have been subject to dismissal if the District Court had retained jurisdiction over them.

In the First Amended Complaint the plaintiffs did not allege a waiver of governmental immunity against the defendant Sheriff or his unnamed deputy, who were sued only in their official capacities.  <u>See</u> JA 62-98 (1st Amd. Compl.).  This is fatally defective pleading.  As state above, a complaint against a county or its officials must allege a waiver of government immunity.  "[A]bsent an allegation to the effect that immunity has been waived, the complaint fails to state a cause of action."  <u>Clark</u>, 117 N.C. App. at 88, 450 S.E.2d at 748.

15

The proposed Second Amended Complaint purports to sue the defendant Sheriff and his deputy in their official and individual capacities, but it does not cure the defect of failing to allege a waiver of governmental immunity against the defendants in their official capacities, nor does it allege a piercing of the defendants' entitlement to public officer's immunity for the claims against the defendants in their individual capacities.  See JA 327-67 (2nd Amd. Compl.).  This too is defective pleading.  As explained above, when suing a law enforcement officer in her individual capacity, a plaintiff must allege that the "defendant acted maliciously, corruptly, or outside the scope of her official authority."  Baker, 224 N.C. App. at 435, 737 S.E.2d at 152.  Absent such an allegation, the complaint fails to state a claim for relief and must be dismissed.  Id.

Thus, the plaintiffs' First Amended Complaint is fatally flawed and the proposed Second Amended Complaint does not cure its defects.  The Second Amended Complaint, if the Court granted the plaintiffs' motion to file it, would be futile in this regard, and if the lower court had retained jurisdiction over the state-law claims then the claims would have been dismissed when the claims in the Second Amended Complaint were dismissed.  By not retaining jurisdiction over these claims, the District Court is providing the plaintiffs an opportunity to cure the defects in their pleadings and timely re-file them in state court.

This Court has found that a district court acted within its discretion when it dismissed supplemental state-law claims that could be re-filed in state court before the expiration of the statute of limitations. See Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 553 n.4 (4th Cir. 2006) (stating that there was "no basis for finding an abuse of discretion in the district court's decision dismissing this state law claim without prejudice" and noting that district courts have "wide discretion" in deciding whether to retain jurisdiction). In this case the lower court declined to retain jurisdiction over the state-law claims (JA 500), which means that, just as in Yashenko, the claims have dismissed without prejudice and the plaintiff is free to re-file them in state court.

It is thus clear that the District Court's decision not to retain jurisdiction over the state-law claims was not only within its discretion but also beneficial to the plaintiffs, and it should be affirmed.[4]

---

[4] The District Court found that only the 5th, 11th, and 12th claims applied to the Sheriff and deputy. (JA 493.) Count V is a Section 1983 claim, and Counts 11 and 12 seek permanent injunctions but do not state any state-law claims. Thus, one can conclude that dismissal of the state-law claims had no effect on the Sheriff and his deputy because no state-law claims were alleged against them. The plaintiffs allege state-law claims for negligent infliction of emotional distress (Counts VI, VII, and VIII), false imprisonment (Count IX); and battery (Count X). (JA 88-94.) Though the Sheriff and Deputy Bailey are not mentioned in these claims, the defendants make the above argument regarding the state-law claims out of an abundance of caution.

17

## **CONCLUSION**

For the reasons and authorities cited herein, Appellee Chris Davis respectfully requests that this Court affirm the United States District Court's decision in toto.

## **STATEMENT WITH RESPECT TO ORAL ARGUMENT**

The Appellees do not desire oral argument.

Respectfully submitted, this 21st day of July, 2016.


/s/ Christopher J. Geis_____
Christopher J. Geis
N.C. State Bar No. 25523
WOMBLE CARLYLE SANDRIDGE &
RICE, *A Limited Liability Partnership*
One West Fourth Street
Winston-Salem, NC 27101
Telephone:  (336) 721-3600
Facsimile:  (336) 721-3660
E-mail: cgeis@wcsr.com
*Attorney for defendant Sheriff Chris Davis*

18

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
**Effective 12/01/2016**

**No.** 17-1290    **Caption:** Z.G., et al. v. Pamlico County Public Schools Board of E

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

☑ this brief or other document contains ____4,104____ [*state number of*] words

☐ this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

☑ this brief or other document has been prepared in a proportionally spaced typeface using
MS Word 2016 _____ [*identify word processing program*] in
Times New Roman, 14 point _____ [*identify font size and type style*]; **or**

☐ this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Christopher J. Geis _____

Party Name Sheriff Chris Davis _____

Dated: 7/21/2017 _____

# CERTIFICATE OF SERVICE

I certify that on  7/21/2017            the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Christopher J. Geis

Signature                                        Date

7/21/2017